AUTUMN M. ELLIOTT (SBN 230043)
autumn.elliott@disabilityrightsca.org
BEN CONWAY (SBN 246410)
ben.conway@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA  90017
Telephone: (213) 213-8000
Fax: (213) 213-8001

JESSICA P. WEBER*
JWeber@browngold.com
ALYSSA L. HILDRETH*
AHildreth@browngold.com
BROWN GOLDSTEIN LEVY
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
Telephone: (410) 962-1030
Fax: (410) 385-0869

*Applications for admission *Pro Hac Vice*
to be submitted

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| KAREN ROSE, ANNE L. PEYTON, RONZA OTHMAN, and THE NATIONAL FEDERATION OF THE BLIND, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>STEVEN TERNER MNUCHIN, Secretary of the United States Department of the Treasury, in his official capacity,<br><br>    Defendant. | Case No.: 3:19-cv-4254<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiffs, Karen Rose, Anne L. Peyton, Ronza Othman, and the National Federation of the Blind, Inc. ("NFB"), by and through undersigned counsel, file their Complaint for Declaratory and Injunctive Relief, and respectfully allege as follows:

## I.   INTRODUCTION

1. This action seeks to end systemic violations by the United States Department of the Treasury ("Treasury"), through its bureau the Internal Revenue Service ("IRS"), of the civil rights of blind taxpayers by requiring the Treasury to provide blind persons equally effective access to all print communications distributed by the IRS, as required by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").

2. For semantic convenience throughout this complaint, the term "blind" is used in its broadest sense to include all persons who, under federal civil rights laws including Section 504, have a vision-related disability that requires alternative methods to access hard-copy standard print.

3. The mission of the IRS is to "[p]rovide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and enforce the law with integrity and fairness to all."  IRS, https://www.irs.gov/about-irs/the-agency-its-mission-and-statutory-authority (last visited June 19, 2019).  To carry out this role, the IRS regularly communicates with taxpayers by hard-copy notice or letter in standard print, a format that the more than seven million blind adults in the United States cannot read.  This lack of access compromises the ability of blind taxpayers to review and, if necessary, respond to IRS print communications on a timely basis, and often forces them to divulge sensitive information to sighted third parties to obtain assistance.  The IRS's failure to communicate with blind taxpayers as effectively as it does with sighted taxpayers can and does cause misunderstanding regarding tax responsibilities, resulting in financial penalties and personal hardship.

4. Section 504 and its implementing regulations require the IRS to communicate effectively with blind taxpayers. The IRS must have a comprehensive and proactive system in place to provide auxiliary aids and services and make the modifications necessary to ensure that blind persons have an equal opportunity to participate in and enjoy the benefits of IRS programs. Appropriate auxiliary aids and services for blind persons may include providing documents in alternative formats such as Braille, HTML, large print, audio CD, and digital navigable formats supported by computers and digital talking-book players, transmitted through data CD, e-mail, or other requested media. More than four decades after the enactment of the Rehabilitation Act, as a result of its failure to put in place systemic policies, procedures, and practices regarding effective communication, the IRS has failed to communicate effectively with blind persons in these or any other accessible formats. Such conduct bars blind taxpayers from participating equally in IRS programs.

## II.     JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1361. Plaintiffs seek a declaration of rights pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

6. Venue over Plaintiffs' claims is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b), because Plaintiff Karen Rose resides within the District, a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the District, and Defendant maintains several offices and operates in the District.

7. Because Plaintiff Karen Rose resides in the County of Alameda, a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the County of Alameda, and Defendant maintains offices and operates in both the City and County of San Francisco and the County of Alameda, assignment to the San Francisco Division is appropriate pursuant to Rule 3-2(d) of

the Local Rules of the United States District Court for the Northern District of California, which provides for assignment in either the San Francisco or Oakland Divisions here.

### III. PARTIES

8. Plaintiff Karen Rose is blind and a United States taxpayer. She is thus a qualified individual with a disability within the scope of Section 504. Ms. Rose resides in Berkeley, California.

9. Plaintiff Anne L. Peyton is blind and a United States taxpayer. She is thus a qualified individual with a disability within the scope of Section 504. Ms. Peyton resides in Tampa, Florida and is a member of the NFB.

10. Plaintiff Ronza Othman is blind and a United States taxpayer. She is thus a qualified individual with a disability within the scope of Section 504. Ms. Othman maintains residences in both Burbank, Illinois and Baltimore, Maryland and is a member of the NFB.

11. The NFB, the oldest and largest national organization of blind persons, is a non-profit corporation duly organized under the laws of the District of Columbia with its principal place of business in Baltimore, Maryland. It has affiliates in all 50 states, Washington, D.C., and Puerto Rico. The vast majority of its approximately 50,000 members are blind persons who are recognized as a protected class under federal laws. The NFB is widely recognized by the public, Congress, executive agencies of government, and the courts as a collective and representative voice on behalf of blind Americans and their families. The purpose of the NFB is to promote the general welfare of the blind by (1) assisting the blind in their efforts to integrate themselves into society on terms of equality and (2) removing barriers and changing social attitudes, stereotypes, and mistaken beliefs that sighted and blind persons hold concerning the limitations created by blindness and that result in the denial of opportunity to blind persons in virtually every sphere of life.

12. The NFB and many of its members have long been actively involved in promoting equal access to important information regarding government benefits and accessible technology so that blind persons can live and work independently in today's technology-dependent world.  NFB members reside throughout the United States, including California.  Plaintiffs Anne L. Peyton and Ronza Othman are among the many NFB members who cannot independently and privately access the print communications that they receive from the IRS.

13. Defendant Steven Terner Mnuchin is the Secretary of the Treasury, an executive department of the United States federal government.  The Treasury administers the federal government's revenue service through its bureau the IRS, and is responsible for ensuring the program's compliance with federal law.  Secretary Mnuchin is sued in his official capacity as the official charged with performing the statutory and regulatory duties of the Treasury, and with supervisory responsibility over the IRS and its divisions, agents, employees, and representatives.  All divisions, agents, contractors, employees, and representatives of the Treasury were acting within the scope of their agency or employment while making any of the statements and committing any of the acts alleged herein.

## IV. **STATEMENT OF FACTS**

14. The IRS collects trillions of dollars in revenue and processes approximately 240 million tax returns each fiscal year.

15. The IRS regularly communicates with members of the public through hard-copy standard print notices or letters.  A taxpayer may receive a notice or letter from the IRS for a variety of reasons, including when: (1) the taxpayer has a balance due; (2) the taxpayer is due a larger or smaller refund; (3) the IRS has a question about a tax return; (4) the IRS needs to verify identity; (5) the IRS needs additional information; (6) the IRS changed a submitted return; or (7) the IRS needs to notify the taxpayer of delays in processing a return.  According to the IRS, "[e]ach notice or letter contains a lot of valuable information, so it's very

important that [the taxpayer] read it carefully." IRS, https://www.irs.gov/individuals/understanding-your-irs-notice-or-letter (last visited June 19, 2019).

16. The IRS sends taxpayers notices and letters exclusively in hard-copy standard print format. Most blind persons, however, cannot readily access standard print. Instead, they typically have an alternative primary reading method such as Braille, screen-access software, large print, or audio recording, that allows them to access and respond to communications independently and privately. The IRS does not offer these or any other accessible formats for blind persons to access their notices and letters.

17. While sighted taxpayers can independently and privately review and, if necessary, respond to IRS print communications regarding their tax obligations, the IRS denies blind taxpayers this opportunity. Because the IRS routinely provides blind persons with notices and letters in standard print, blind taxpayers cannot independently identify the sender of the communication or access the content contained therein.

18. The IRS has no effective procedure, practice, or custom of providing notices or other documents to blind persons in formats that are accessible to them, even if the individual is known to the IRS to be blind or has made a specific request for an alternative format.

19. The IRS does not adequately inform blind taxpayers that they have a right to receive information in alternative formats.

20. The IRS has no effective system for automatically distributing materials in alternative formats to people who have made a prior request for such communications.

21. The only notice that blind taxpayers receive about the existence and content of mailed IRS documents is embodied in documents that they cannot read.

22. The IRS's failure to communicate in accessible formats forces blind

taxpayers to rely on the availability of sighted third parties for assistance, which often requires them to divulge sensitive information such as their financial information or Social Security number.  Receiving IRS print communications in inaccessible formats thus compromises the ability of blind taxpayers to independently and privately understand and, if need be, dispute amounts due, address IRS questions regarding their returns, verify their identities, and receive status updates on the processing of their returns. If no third-party assistance is available, blind taxpayers may not receive the information contained in a notice or letter from the IRS at all.

23.     Moreover, IRS print communications often require a response by a specific date.  The IRS requires taxpayers to respond to notices and letters on a timely basis to minimize additional interest and penalty charges, as well as to preserve their appeal rights.  Because such communications are provided in inaccessible standard print, blind persons may not know that an important document has arrived in the mail.  Instead, they must depend on the availability of sighted third parties to convey the information, compromising their ability to respond to deadlines in a timely manner and putting them at risk of financial penalties.

24.    The actions of the Treasury, through its bureau the IRS, depriving blind persons of effective access to print communications regarding their tax obligations, discriminates against blind taxpayers, including Ms. Rose, Ms. Peyton, Ms. Othman, and many NFB members.

**A.     Karen Rose**

25.     Karen Rose is a blind taxpayer.  Ms. Rose accesses written materials through Braille or screen-access software that converts textual information on a computer, tablet, or smartphone screen into an audio output or a refreshable Braille display pad.

26.     Ms. Rose is self-employed and files her tax return with the IRS in

October each year.  While her tax return is prepared and filed by an accountant, the IRS sends print communications directly to Ms. Rose.

27. In or around August 2018, Ms. Rose was about to dispose of a print letter she had not opened, when her sighted friend noticed that it was a letter from the IRS.  The letter, dated July 2018, was a second notice that Ms. Rose owed $24,507.78 in unpaid taxes for the 2017 fiscal year.  Because Ms. Rose cannot read standard print, she did not independently know that an important document had arrived in the mail, nor was she able to access its content, and she consequently was unable to timely respond.  As a result, Ms. Rose accrued additional interest and penalty charges.

28. Ms. Rose subsequently contacted one of her elected representatives, who referred her to the local IRS Taxpayer Assistance Center ("TAC").  While working with the TAC, Ms. Rose learned that she had accumulated approximately $1,500 in additional interest and penalty charges.  The TAC helped Ms. Rose appeal these fees, arguing that she should not be penalized for receiving inaccessible IRS print communications. The IRS denied the appeal.

29. During the appeal process, in or around August or September 2018, the TAC additionally inquired about the availability of alternative formats for blind taxpayers to access IRS print communications.  As of the filing of this complaint, neither the TAC nor Ms. Rose has received a response to this inquiry.

30. In early 2019, the IRS sent Ms. Rose a check for approximately $77.  The check arrived without any documentation.  Ms. Rose does not know what this check was for, but it did not fully reimburse her for the interest and penalties she previously incurred and paid. The IRS still has not fully reimbursed Ms. Rose for the penalties and interest she accrued because of the IRS's failure to send her notices in accessible formats.

31. Ms. Rose continues to pay taxes to the IRS each year and is concerned that she may continue to miss important notifications from the IRS if they are not

sent in formats she can access independently. Ms. Rose therefore wishes to receive all future communications from the IRS in accessible formats, such as Braille or accessible electronic formats.

  **B.** **Anne L. Peyton**

  32. Anne L. Peyton is a blind taxpayer. She accesses written information through Braille or screen-access software.

  33. Although the IRS knows that Ms. Peyton is blind because she takes a deduction related to her blindness on her tax return each year and has provided verification of her disability to the IRS, the IRS has failed to communicate with Ms. Peyton in formats she can independently access.

  34. In or around June 2018, Ms. Peyton received a hard-copy standard print letter from the IRS. Because Ms. Peyton cannot read standard print, she was forced to ask for the assistance of a sighted third party to read the letter. The letter stated that Ms. Peyton owed the IRS $3,251.96 as the result of changes to her 2017 Form 1040. The letter further provided that this balance was due by June 25, 2018.

  35. In or around April 2019, Ms. Peyton called the IRS main number, 1-800-829-1040, to request that she receive future print communications, including notices and letters, in accessible formats. The automated response system did not provide Ms. Peyton an option to make such request and did not provide an option for general inquiries. She subsequently called a different IRS number, 1-800-829-3676, and was connected with an IRS representative. The representative informed Ms. Peyton that she did not handle accessibility concerns and instead instructed her to call the IRS main number, even after Ms. Peyton informed her that she had already tried that phone number to no avail.

  36. Ms. Peyton continues to pay federal taxes each year and does not want to risk being unable to access important notifications from the IRS. She therefore wishes to receive all future communications from the IRS in accessible formats,

such as Braille or accessible electronic formats.

### C. Ronza Othman

37. Ronza Othman is a blind taxpayer. She accesses written information through Braille or screen-access software.

38. In 2017, Ms. Othman included income from both W-2 and 1099 forms with her tax return. She paid taxes in March 2018 that she believed fully satisfied her tax liability for 2017.

39. In or around May 2018, Ms. Othman received a hard-copy letter from the IRS in standard print format. The letter stated that she owed about an additional $200 for her 2017 taxes but did not provide an explanation for this additional amount. Although Ms. Othman did not understand why she owed this additional amount, she promptly paid it.

40. In or around June 2018, the IRS sent Ms. Othman a second letter stating that she owed an additional $800 for her 2017 taxes. Again, the letter did not provide an explanation for this additional amount.

41. Because Ms. Othman cannot read standard print, she was forced to hire a live reader and ask for the assistance of a sighted third party to read the letters that she received from the IRS.

42. Ms. Othman called the IRS main number, 1-800-829-1040, in or around July 2018 to inquire as to why she owed this additional amount. The IRS representative informed Ms. Othman that the IRS would send her a hard-copy print letter explaining the additional charges by mail. Ms. Othman informed the representative that she was blind and needed an alternative format to access the print communication, but the representative informed her that the IRS communicates with taxpayers exclusively by hard-copy standard print. The representative did not offer Ms. Othman any alternative format to access the requested information.

43. Ms. Othman called the IRS main number again in or around

September of 2018.  She again informed the IRS representative that she was blind and requested to receive information regarding the balance due in an electronic format.  The representative stated that electronic formats were not available.  Ms. Othman asked if the representative could at least read her the print communications over the phone, but the representative declined and stated that information could only be disclosed by hard-copy standard print.

44. The IRS eventually deducted the remaining balance it believed Ms. Othman owed on her 2017 taxes from her 2018 tax refund, but Ms. Othman still lacks any information as to why the IRS determined that she owed additional taxes for 2017.

45. Ms. Othman would still like an explanation of why she owed additional taxes in 2017.  Furthermore, Ms. Othman continues to pay taxes to the IRS each year and is concerned that she will once again have no way to independently learn important information about her tax liability if the IRS continues to deny her requests for accessible formats.  Ms. Othman therefore wishes to receive all future communications from the IRS in accessible formats, such as Braille or accessible electronic formats.

### D. The National Federation of the Blind

46. The NFB has been and continues to be harmed by the Treasury's discriminatory actions, through its bureau the IRS, as set forth herein, in two ways.

47. First, because the ultimate purpose of the NFB is the complete integration of the blind into society on a basis of equality, the IRS's discriminatory treatment of blind taxpayers frustrates the NFB's organizational mission.  The NFB's objective includes the removal of legal, economic, and social discrimination.  As part of its mission and to achieve these goals, the NFB has worked actively to ensure that the blind have an equal opportunity to access government programs and services by collaborating with federal agencies, such as

the United States Department of Education and the United States Department of Health and Human Services, to ensure accessibility for the blind.  The NFB has devoted extensive resources - resources that have been diverted from other important projects - to assisting federal and state government agencies, along with countless private entities, with identifying and correcting methods of communication (including websites and hard-copy documents) that are inaccessible to the blind.  Indeed, before filing this lawsuit, the NFB devoted resources to making an unsuccessful overture to the IRS to work collaboratively to remedy the systemic failures causing the problems outlined in this complaint.  The IRS failed to respond to this correspondence.

48.   Second, the NFB is a membership organization and has many blind members, including Ms. Peyton and Ms. Othman, who have received or may receive IRS notices or letters and who wish to access such print communications independently and privately.  The Treasury's discriminatory conduct harms many NFB members who are similarly situated.

## V.   CAUSE OF ACTION
### Violation of Section 504 of the Rehabilitation Act of 1973

49.   Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

50.   Section 504 of the Rehabilitation Act of 1973 provides that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or activity conducted by any Executive agency[.]"

29 U.S.C. § 794 (as amended).

51.   Ms. Rose, Ms. Peyton, Ms. Othman, and members of the NFB are "individual[s] with a disability" as defined in 29 U.S.C. § 705(20) because each

has a visual impairment that substantially limits one or more of his or her major life activities, including the major life activity of seeing.

52. As a result of being "individual[s] with a disability," as defined in 29 U.S.C. § 705(20), Ms. Rose, Ms. Peyton, Ms. Othman, and members of the NFB are entitled to modifications and auxiliary aids and services that provide them equally effective access to IRS print communications.

53. As a bureau of the Treasury, an executive department of the United States federal government, the IRS must comply with Section 504.

54. The IRS is bound by regulations the Treasury has promulgated under Section 504 of the Rehabilitation Act, 31 C.F.R. Part 17.

55. These regulations require the IRS to provide Plaintiffs with "auxiliary aids," which are "services or devices that enable persons with impaired sensory, manual, or speaking skills to have an equal opportunity to participate in, and enjoy the benefits of, programs or activities" that the IRS conducts. 31 C.F.R. § 17.103(c). As defined by the regulations, auxiliary aids that are "useful for persons with impaired vision include readers, Brailled materials, audio recordings, and other similar services and devices." *Id.* The regulations also require the IRS to "take appropriate steps to effectively communicate with . . . members of the public" and "furnish appropriate auxiliary aids where necessary to afford an individual with handicaps an equal opportunity to participate in, and enjoy the benefits of," its programs and activities. 31 C.F.R. § 17.160(a). In addition, the IRS must "give primary consideration to the requests of" individuals with disabilities in determining the type of auxiliary aid it must provide. *Id.*

56. As alleged herein, the Treasury, through its bureau the IRS, has and continues to discriminate unlawfully against Plaintiffs and many NFB members by failing to communicate with them in an accessible format. By refusing to communicate in formats that are accessible to blind persons, and by failing to implement policies, procedures, and practices to ensure that blind persons receive

effective communication, the IRS has created and continues to create a significant and unnecessary obstacle to Plaintiffs' and many NFB members' understanding of and ability to respond timely to important information concerning their tax obligations.

57. Ms. Rose, Ms. Peyton, Ms. Othman, and many NFB members cannot comprehend or access important information contained in IRS print communications in a manner equal to that of sighted persons. As a direct consequence, blind taxpayers are at greater risk of financial penalties, and have far less capacity to discover, correct, and appeal errors.

58. Providing IRS print communications in formats accessible to Ms. Rose, Ms. Peyton, Ms. Othman, and NFB members would not fundamentally alter the IRS's programs or create an undue administrative or cost burden. Numerous governmental agencies and large commercial entities already provide print communications to blind persons in similar accessible formats.

59. The IRS's conduct constitutes an ongoing and continuous violation of the law. Unless restrained from doing so, the IRS will continue to so violate the law. The IRS's conduct has caused and will continue to cause Plaintiffs immediate and irreparable injury. Plaintiffs have no adequate remedy at law for the injuries they suffer and will continue to suffer. Thus, Plaintiffs are entitled to injunctive relief.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

1. Declare that Defendant's failure to ensure that the IRS offers and provides print communications in accessible formats to blind taxpayers violates Section 504 of the Rehabilitation Act of 1973;
2. Declare that Defendant has a duty to provide equal access to all IRS print communications in appropriately secure formats that are accessible to blind persons, including Braille, large print, electronic

mail, data CD, audio recordings, and online notices and letters;

3. Grant a permanent injunction requiring Defendant, his successors in office, agents, assigns, representatives, employees, and all persons acting in concert therewith, to provide equal access to all IRS print communications in appropriately secure formats that are accessible to blind persons, including Braille, large print, electronic mail, data CD, audio recordings, and online notices and letters, and to adopt policies, procedures, and practices to ensure the consistent and affirmative provision of these alternative formats to blind individuals, such that blind individuals need not make multiple requests for accessible formats;

4. Award Plaintiffs equitable relief requiring Defendant to forgive any and all interest, fees, and penalties imposed on Plaintiffs as a result of Defendant's failure to comply with Section 504;

5. Award Plaintiffs reasonable attorneys' fees and costs, as provided by law; and

6. Order such other and further relief as the Court deems just and proper.

Dated: July 24, 2019                    Respectfully submitted,

*/s/ Autumn M. Elliott*
Autumn M. Elliott (SBN 230043)
Ben Conway (SBN 246410)
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Fax: (213) 213-8001
autumn.elliott@disabilityrightsca.org
ben.conway@disabilityrightsca.org

/s/ Jessica P. Weber
Jessica P. Weber
Alyssa L. Hildreth
BROWN GOLDSTEIN LEVY
120 E. Baltimore Street, Suite 1700
Baltimore, MD  21202
Telephone: (410) 962-1030
Fax: (410) 385-0869
JWeber@browngold.com
AHildreth@browngold.com


*Attorneys for Plaintiffs*