# Exhibit 1

## SETTLEMENT AGREEMENT

1.      Plaintiffs, Karen Rose, Anne L. Peyton, Ronza Othman, and the National Federation of the Blind, Inc., have brought an action against Defendant, Steven Terner Mnuchin, in his official capacity as Secretary of the United States Department of the Treasury, *Rose et al., v. Mnuchin*, No. 4:19-cv-04254-HSG (N.D. Cal.) (the "Case").  In the Case, Plaintiffs allege that the Internal Revenue Service ("IRS") violates Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), by not providing blind persons equally effective access to all print communications distributed by the IRS.

2.      Defendant denies the allegations of Plaintiffs in the Case, and the issue of liability has not been litigated.

3.      The Parties believe this settlement agreement is fair, reasonable, and adequate to protect the interests of all parties.

## DEFINITIONS

4.      "Audio" means the technology of sound reproduction.  Audio can be created synthetically (including by the use of text-to-speech technology), recorded from real-world sounds, or both.

5.      "Electronic" means a computer file or other digital medium.

6.      "Blind" means all persons who have a vision-related disability that requires the use of alternative techniques or assistive technology to access visual information.

7.      "Braille" means a system of reading and writing for blind people in which characters are represented by patterns of raised dots.

1

8.     "Large print" means an enlarged font generally with a typeface that is 18 points or larger.  For certain text, such as the text in a footer, that appears in a typeface that is 8 points or smaller, "large print" may consist of an enlarged font with a typeface that is no smaller than 16 points.

9.     "Alternative format" means a specialized format used to make visual information, such as text or graphics but not including decorative, formatting, or other purely non-substantive elements, accessible to blind individuals.

10.    "Standard print format" means information conveyed visually and produced on paper by the IRS in the ordinary course of business.

11.    "Tax forms" means official government documents with blank spaces for the insertion of required or requested information, produced by the IRS for use by taxpayers in fulfilling their legal obligations under the Internal Revenue Code of 1986, as amended, and other tax laws.

12.    "Instructions" means official government documents produced by the IRS to explain how to complete tax forms.

13.    "Plaintiffs' Counsel" means the attorney or attorney(s) of record communicated to Defendant prior to execution of this Agreement as the individual(s) to be notified where indicated in this Agreement.

14.    "Publications" means official government documents produced by the IRS to provide information about a topic relevant to the completion of tax forms.

15.    "Post-filing notices" means notifications IRS sends to an individual taxpayer about the taxpayer's individual income tax account.  The large majority of post-

filing notices are processed by the Notice Delivery System, which is the information technology system used by the IRS to send systemic notices.

16.    "AMC" means the Alternative Media Center of the IRS or a successor office responsible for providing documents in accessible alternative media formats to IRS employees and taxpayers with disabilities.

17.    "Inserts" means documents enclosed with post-filing notices sent to taxpayers.

18.    "Alternative Media Preference" or "AMP" means a valid request from a taxpayer pursuant to a forthcoming IRS process for that taxpayer to receive post-filing notices that would otherwise be provided in standard print format in, when initially implemented, one of the following alternative formats: Braille, large print, audio, or accessible electronic (initially to include plain text (.txt) and braille ready file (.brf) formats).

19.    "AMP Implementation Deadline" means January 31, 2022.

20.    "Effective Date" means the date on which this Agreement has been signed by counsel for all parties.

21.    "Days" means calendar days, including weekends and holidays.

## PROGRAMMATIC PROVISIONS

### Accessible Formats for Post-Filing Notices

22.    On or before the AMP Implementation Deadline, the IRS will develop and implement a process ("the AMP Process") that will permit a taxpayer with a disability to request post-filing notices that would otherwise be provided in standard print format in one of the following alternative formats: Braille, large print, audio, or electronic (initially

to include plain text (.txt) and braille ready file (.brf) formats). Taxpayers will be able to request and select an alternative format either by submitting an IRS form or by contacting the IRS at a telephone number. Nothing in this Agreement precludes a taxpayer from requesting an alternative format not listed in the preceding sentence, and the IRS will evaluate those requests in accordance with the requirements of Section 504. Under the AMP Process:

    a. The IRS will make best efforts to implement the Alternative Media Preference requested by a taxpayer pursuant to the AMP Process within a reasonable period of time following the submission of the request. For requests submitted using the IRS form, the IRS will make best efforts to implement the AMP in 6 to 8 weeks of receipt. For requests made telephonically, the IRS will make best efforts to implement the AMP within 14 days. In the instructions for the AMP Process and on relevant pages of the irs.gov website, the IRS will inform taxpayers of any expected differences in the processing times for AMP election requests based on the manner the request is submitted.

    b. In the instructions for the AMP Process, the IRS will advise taxpayers of their ability to contact the IRS via telephone and obtain assistance regarding any post-filing notices that may have been sent prior to the submission of an AMP Process request, as well as the current status of the taxpayer's account as a result of any such post-filing notices.

    c. Once the IRS has processed a taxpayer's Alternative Media Preference, the Alternative Media Preference will be indicated on the taxpayer's

account of record such that IRS employees who access the taxpayer's electronic tax records will be able to identify that the taxpayer has requested an alternative media format and will be able to identify the Alternative Media Preference.

d. A taxpayer may change his or her Alternative Media Preference by making a new request. However, the IRS will continue mailing post-filing notices that would otherwise be provided in standard print format using the Alternative Media Preference that it has on record until the IRS has processed a new Alternative Media Preference.

e. Once the IRS processes a taxpayer's Alternative Media Preference, the Alternative Media Preference will become the default format for all post-filing notices that would otherwise be provided in standard print format sent to the taxpayer after the date the IRS processes the request. The IRS will send a standard print copy of a post-filing notice in the same envelope as the taxpayer's Alternative Media Preference format so long as the post-filing notice would otherwise be provided in standard print format.

f. Generally, inserts enclosed with post-filing notices that are sent in the taxpayer's AMP format will also be provided in the same AMP format. The following inserts will not be provided in the taxpayer's AMP format: (a) documents that were sent to the IRS by the taxpayer and that the IRS has returned to the taxpayer; (b) documents, including forms and envelopes, for the taxpayer to return to the IRS, although any such standard print form to be returned to the IRS will be accompanied by a

reference copy version in the taxpayer's AMP format (except taxpayers who have elected audio or electronic formats will receive an accessible .pdf file); and (c) other documents, excluding all IRS Notices and Publications, that it is not reasonably feasible to convert into the AMP format, in which case the IRS will notify the taxpayer in the accessible format post-filing notice of the general content of inserts being provided. Examples of documents that may fall within subparagraph (c) include, but are not limited to, photographs or maps.

g. For the post-filing notices processed by the Notice Delivery System, the IRS intends to generate a copy of the notice in the designated AMP format. For the post-filing notices not processed by the Notice Delivery System, the IRS anticipates that generating a copy of the notice in the designated AMP format will require individual handling, in which case the IRS will make best efforts to generate and send the notice within a reasonable period of time.

23. Within 4 months of the Effective Date, and prior to and separate from the implementation of the AMP Process, the IRS will determine whether it can convert a standard print format post-filing notice that has been issued to a taxpayer into an audio format as an alternative format, and will notify Plaintiffs' Counsel of its determination. If the IRS determines that it can offer an audio format, it will include in its notification to Plaintiffs a projected timetable by which it will include conversion to audio format as a service from the AMC.

24.     Within 4 months of the Effective Date, the IRS will include a link within the accessibility-related webpages on irs.gov to IRS Form 843, Claim for Refund and Request for Abatement.  The IRS will indicate that Form 843 is the appropriate mechanism for a taxpayer to request abatement of penalties or interest.  The IRS will also include a notice to taxpayers stating that (1) all taxpayers can contact the IRS via telephone and obtain assistance regarding the completion and filing of Form 843; and (2) qualifying taxpayers may be able to obtain assistance from the Taxpayer Advocate Service regarding completion and filing of Form 843.

25.     The IRS will undertake a review of its policies, practices, and guidance ("Abatement Guidance") applicable to the processing of Form 843, Claim for Refund and Request for Abatement, and identify areas where that Abatement Guidance may be revised to improve awareness of common issues affecting blind taxpayers in their interactions with the IRS, consistency of decisions that involve claims based on blindness, and responsiveness to claimants asserting prejudice based on blindness. The IRS's review of the Abatement Guidance related to relief from penalties will include, but not be limited to, consideration of the following:

- Whether the IRS sent correspondence in a format that was not accessible to a blind taxpayer, and a penalty is assessed or increased due to a failure to respond to that correspondence.

- Where a blind taxpayer requests an accessible notice for the first time, the time it takes the IRS to provide an accessible copy of a notice from the date of the taxpayer's request.

- Where a blind taxpayer previously has requested to receive notices in an accessible format, the time it takes the IRS to provide an accessible copy of a notice.

- A blind taxpayer's degree of knowledge of a tax due or a penalty owed prior to the issuance of an inaccessible notice.

The IRS's review of the Abatement Guidance related to abatement of interest will include, but not be limited to, the IRS's obligation to take appropriate steps to effectively communicate with blind taxpayers, consideration of the extent of limits on the IRS's discretion in granting abatement requests, and the effect of a blind taxpayer's visual impairment on the imposition or accrual of interest.

26.    Within 6 months of the AMP Implementation Deadline, the IRS will notify Plaintiffs of proposed revisions to the Abatement Guidance.  Within 21 days of this notification, Plaintiffs will provide responsive comments to the IRS on the proposed revisions.  Plaintiffs agree that the revisions to the Abatement Guidance will be consistent with the individualized, fact-specific nature of the process for adjudicating claims for refund or requests for abatement under Form 843, and that no proposed revision will be subject to an Abatement Guidance Dispute on the grounds that it does not impose a rule of automatic abatement of interest or relief from penalties in particular circumstances. The IRS will consider Plaintiffs' responsive comments and, within 21 days of receipt, notify Plaintiffs of the final revisions to the Abatement Guidance.  Absent initiation of an Abatement Guidance Dispute by Plaintiffs as described in the following paragraph, the IRS will update the Abatement Guidance accordingly in the then-subsequent update cycle.

27.     Within 14 days of receipt of the final revisions to the Abatement
Guidance, Plaintiffs may initiate an Abatement Guidance Dispute by notifying the IRS in
writing.  Any Abatement Guidance Dispute shall be limited to allegations that the final
version of the Abatement Guidance violates Section 504, and may be submitted to
mediation and, if necessary, for judicial resolution pursuant to the paragraphs below.
Plaintiffs agree that these paragraphs constitute the sole mechanism for disputing the final
revisions to the Abatement Guidance and that no other dispute regarding the Abatement
Guidance, including pursuant to the dispute resolution process provided for in Paragraphs
59 through 64, may be initiated.

a.  Within 14 days of initiating an Abatement Guidance Dispute, if there has
not yet been a settlement referral to a U.S. Magistrate Judge, Plaintiffs
may request that the Court refer the Abatement Guidance Dispute to one
of the three U.S. Magistrate Judges for the Northern District of California
previously agreed to by the Parties, *see* ECF No. 27, or if all of those
judges have ceased to be U.S. Magistrate Judges in the Northern District
of California to a randomly assigned U.S. Magistrate Judge, for mediation
at a settlement conference.  Plaintiffs may request that the assigned U.S.
Magistrate Judge schedule a settlement conference at which Plaintiffs and
the IRS shall attempt to resolve the Abatement Guidance Dispute.

b.  If Plaintiffs and the IRS are unable to reach a mutually acceptable
resolution through mediation, Plaintiffs may seek judicial resolution of the
Abatement Guidance Dispute by filing a motion with the Court.
Plaintiffs' motion shall be limited to allegations that the final version of

the Abatement Guidance violates Section 504, and shall seek no remedy other than requiring the IRS to modify its final revisions to the Abatement Guidance. If Plaintiffs' motion is granted, the IRS will update the Abatement Guidance accordingly in the then-subsequent update cycle.

28.     The IRS will consider and, within 6 months of the Effective Date, determine whether to amend the IRS Form 843 Instructions to include additional direction or information that may be pertinent to blind taxpayers; requests for abatement of interest or relief from penalties. Such direction or information may, for example, include:

       a.  Whether taxpayer is blind;

       b.  Date taxpayer requested an alternative format and type of alternative format selected;

       c.  Date taxpayer received standard print notice (if applicable and known);

       d.  Description of standard print notice received (if applicable and known); and;

       e.  Date taxpayer learned of issue described in standard print notice (if applicable).

If the IRS determines to amend the IRS Form 843 Instructions, it will provide a draft of such amendments to Plaintiffs' Counsel. Plaintiffs, through their counsel, shall provide feedback on these amendments within 30 days of receiving them and the IRS shall consider such feedback. Before any revised IRS Form 843 Instructions are published, the IRS shall provide a response to Plaintiffs' feedback, in which it will provide a summary

description of the IRS's overall response to Plaintiffs' feedback, and include, where the IRS deems appropriate, specific reasons for any modified or rejected feedback.

**Internal and Public Outreach**

29.    Within 4 months of the Effective Date, the IRS will initiate communications to all IRS employees and any impacted contractors regarding the role of the AMC, the alternative formats currently available through the AMC, and the current process for taxpayers to obtain from the AMC copies of post-filing notices in alternative formats.  These communications will include:

a.  Posting a Servicewide Electronic Research Portal ("SERP") Alert (an online tool for quickly providing critical information to employees across the IRS).

b.  Issuing a *Leaders' Alert* (distributed electronically to IRS executives and managers).

c.  Sharing talking points and other messaging that front-line managers can use in conversations with their employees.

d.  Including an article in *W&I Offline* (distributed to all Wage & Income ("W&I") employees).

e.  Including an article in *Inside the Insider* (distributed electronically to all W&I employees).

f.  Including an article in *IRS Headlines* (distributed electronically to all IRS employees).

30.    Within 4 months of the Effective Date, the IRS will ensure that relevant pages of the irs.gov website reflect an overview of the AMC, including the products and services it currently provides, a summary of the additional products and services

11

described in this Agreement and the general timetables by which those additional products and services are due to be implemented under this Agreement, how to contact the AMC, a notification that taxpayers may file accessibility-related complaints to the IRS's Office of Equity, Diversity, and Inclusion or address accessibility complaints or concerns to the Accessibility Helpline described in Paragraph 43 below, and a link to the accessible format versions of the tax forms, instructions, and publications available at irs.gov, including instructions on how to obtain hard copy accessible formats of these documents.  The relevant pages of the irs.gov website will also describe the current process for taxpayers to obtain from the AMC copies of post-filing notices in alternative formats.

31.     In the Fiscal Year 2021 cycle of updating the Internal Revenue Manual following the Effective Date, the IRS will update Section 21.3.1.6 of the Internal Revenue Manual to describe, in more detail, the AMC's services and encourage utilization.  Specifically, the IRS will revise the current language advising employees to "[t]ry to assist the taxpayer without providing an Alternative Media format . . ." with the goal of using language that encourages employees to both assist the taxpayers and notify them of the availability of and process for obtaining alternative formats from the AMC.

32.     Within 4 months of the Effective Date, the IRS will notify industry partners (*e.g.*, H&R Block, TurboTax, etc.) regarding current accessibility offerings by the IRS and the process for requesting alternative formats from the IRS for potential notification of their customers.

33.     Within 4 months of the Effective Date, the IRS will notify Plaintiffs' Counsel of the communications and updates described in Paragraphs 29, 30, and 32

above.  Within two weeks of sending this notification to Plaintiffs, the IRS will disseminate to the entities identified on Exhibit A via mail and email, to the extent such contact information is contained in Exhibit A, a notification that relevant pages of the irs.gov website have been updated and that IRS personnel have received information about the AMC and the services it offers.

34.    No later than 3 months prior to the AMP Implementation Deadline, the IRS will initiate communications to all IRS employees regarding the forthcoming availability of the Alternative Media Preference mechanism.  These communications will include:

     a.   Posting a SERP Alert (an online tool for quickly providing critical information to employees across the IRS).

     b.   Issuing a *Leaders' Alert* (distributed electronically to IRS executives and managers).

     c.   Sharing talking points and other messaging that front-line managers can use in conversations with their employees.

     d.   Including an article in *W&I Offline* (distributed to all W&I employees).

     e.   Including an article in *Inside the Insider* (distributed electronically to all W&I employees).

     f.   Including an article in *IRS Headlines* (distributed electronically to all IRS employees).

35.    No later than 3 months prior to the AMP Implementation Deadline, the IRS will notify industry partners (*e.g.*, H&R Block, TurboTax, etc.) regarding the

forthcoming availability of the Alternative Media Preference mechanism for potential notification of their customers.

36.     No later than 3 months prior to the AMP Implementation Deadline, the IRS will notify all taxpayers who, in either of the prior two tax years, checked the box indicating that they are blind on their Form 1040 or Form 1040SR regarding the forthcoming availability of the Alternative Media Preference mechanism.  This notice will be sent to every such taxpayer in both Braille and large print format.  The IRS will include a revision to the Form 1040 instructions for the 2022 tax year that includes a reference to the forthcoming availability of the AMP Process, and will endeavor to locate the reference in the section of the instructions addressing the blind checkbox on Form 1040.

37.     Prior to the AMP Implementation deadline, the IRS will ensure that the relevant pages of the irs.gov website will describe the process for taxpayers to elect an Alternative Media Preference.

38.     No later than 10 weeks prior to the AMP Implementation Deadline, the IRS will notify Plaintiffs' Counsel of the communications and updates described in Paragraphs 34 and 35 above, the process and mechanism taxpayers will utilize to elect an Alternative Media Preference, and the formats in which any request form for the Alternative Media Preference will be available.  Within two weeks of sending this notification to Plaintiffs, the IRS will disseminate to the entities identified on Exhibit A via mail and email, to the extent such contact information is contained in Exhibit A, a notification that relevant pages of the irs.gov website have been updated and that IRS

personnel and industry partners have received information about the forthcoming
Alternative Media Preference.

**Training of IRS Personnel**

39.     Within 12 months of the Effective Date, the IRS will ensure training
material for the IRS's Customer Service Representatives and Taxpayer Advisory
Specialists reflects the existing resources available to blind taxpayers, including the
services provided by the AMC, the availability of tax forms, instructions, and
publications in alternative formats on the irs.gov website, and the mechanisms for
lodging complaints related to the provision of alternative formats.

40.     Within 4 months of the Effective Date, the IRS shall provide a draft of
relevant portions of the training materials described in Paragraph 39 to Plaintiffs'
Counsel.  Plaintiffs, through their counsel, shall provide feedback on these training
materials within 30 days of receiving them and the IRS shall consider such feedback and
inform Plaintiffs' Counsel of which feedback is being incorporated, modified, or rejected.
The IRS shall provide a response to Plaintiffs' feedback, in which it will provide a
summary description of the IRS's overall response to Plaintiffs' feedback, and include,
where the IRS deems appropriate, specific reasons for any modified or rejected feedback.

41.     Prior to the AMP Implementation Deadline, the IRS will provide training
to the IRS's Customer Service Representatives and Taxpayer Advisory Specialists on the
Alternative Media Preference mechanism, the process for providing the alternative
format to the taxpayer, and the mechanisms for lodging complaints related to the
provision of alternative formats.

42.     The IRS shall provide a draft of relevant portions of the training materials described in Paragraph 41 to Plaintiffs' Counsel at least 60 days before disseminating the training materials.  Plaintiffs, through their counsel, shall provide feedback on these training materials within 30 days of receiving them and the IRS shall consider such feedback.  The IRS shall provide a response to Plaintiffs' feedback, in which it will provide a summary description of the IRS's overall response to Plaintiffs' feedback, and include, where the IRS deems appropriate, specific reasons for any modified or rejected feedback.

### Accessibility Helpline within the Alternative Media Center

43.     Within 12 months of the Effective Date, the IRS will establish an Accessibility Helpline within the Alternative Media Center for questions related to current and future accessibility services and alternative format documents for blind taxpayers.  This helpline will not be available to answer general tax questions, which should continue to be addressed to the IRS's general customer service telephone number. The Accessibility Helpline will be monitored during regular business hours (Eastern Standard Time) by qualified personnel.

44.     Within 14 months of the Effective Date, the IRS will notify the IRS's Customer Service Representatives and Taxpayer Advisory Specialists of the existence of the Accessibility Helpline.

### Best Practices for Members of Free File Alliance

45.     Within 12 months of the Effective Date, the IRS shall recommend to the Free File Alliance, a nonprofit coalition of tax software companies partnered with the IRS to help millions of Americans prepare and e-file their federal tax returns for free, that the

16

Free File Fillable Forms should comply with applicable accessibility requirements for the visually impaired. The reminder shall include links to resources, including https://www.section508.gov/, https://www.w3.org/standards/webdesign/accessibility, and https://accessibilityswitchboard.org/.

46.     Within 12 months of the Effective Date, Plaintiffs may provide to the IRS information regarding accessibility barriers on the Free File Fillable Forms. The IRS agrees to transmit, under IRS cover, that information to the Free File Alliance with a recommendation that the affected Free File Alliance members investigate the cited accessibility barriers and that the Free File Fillable Forms should comply with applicable accessibility requirements for the visually impaired.

## ATTORNEY'S FEES, COSTS, AND EXPENSES

47.     Following Plaintiffs' filing of a stipulation of dismissal pursuant to Paragraph 52, Defendant shall pay attorney's fees, costs, and expenses to Plaintiffs in the amount of $175,000. Defendant shall submit the necessary paperwork to process the $175,000 payment within twenty-one (21) days of Plaintiffs having provided to Defendant the necessary information to process the payment to be made pursuant to this Agreement, and Defendant shall also make good-faith efforts to provide for payment to be made within ninety (90) days from when Defendant submits the necessary paperwork.

48.     Upon receipt of payment for attorney's fees, costs, and expenses, Plaintiffs shall release and forever discharge all claims against Defendant for attorney's fees, costs, and expenses that have accrued through the date on which Plaintiffs file the Rule 41(a)(1)(A)(ii) stipulation pursuant to Paragraph 52, and for any and all attorney's fees, costs, and expenses that may accrue after the date on which Plaintiffs file the Rule

41(a)(1)(A)(ii) stipulation pursuant to Paragraph 52 in connection with this Agreement, including but not limited to fees, costs, and expenses for any and all monitoring, implementation, or enforcement of, or motion practice related to, the Agreement.

49.     Compliance with all applicable Federal, State, and local tax requirements shall be the sole responsibility of Plaintiffs and their counsel. Nothing in this Settlement Agreement waives or modifies Federal, State, or local law pertaining to taxes, offsets, levies, and liens that may apply to money paid under this Agreement, and Plaintiffs are executing this Agreement without reliance on any representation by Defendants as to the application of any such law.

## RELEASE OF CLAIMS AND DISMISSAL

50.     Plaintiffs and their heirs, administrators, successors, or assigns (collectively, "Releasors"), hereby release, waive, acquit, and forever discharge Defendant, along with Defendant's administrators, successors, officers, employees, and agents (together, the "Releasees") from, and are forever barred and precluded from prosecuting, any and all claims, causes of action, or requests for any monetary or injunctive relief (whether in administrative or in judicial proceedings), whether presently known or unknown, that have been or could have been asserted in the Case by reason of, with respect to, in connection with, or which arise out of, any matters alleged in the case that the Releasors, or any of them, have against the Releasees, or any of them. This release is limited to claims, causes of action, and requests for any monetary or injunctive relief that have been or could have been asserted in the Case pertaining to Individual Master File accounts only. Plaintiffs reserve the right to bring any and all other claims, causes of action, or requests for monetary or injunctive relief that pertain to Business

Master File accounts. This subsection shall not be interpreted to in any way limit the ability of Plaintiffs, either collectively or individually, to prosecute any and all claims, causes of action, or requests for any monetary or injunctive relief (whether in administrative or in judicial proceedings) that may arise following Plaintiffs' filing of the Rule 41(a)(1)(A)(ii) stipulation pursuant to Paragraph 52, even if such future claims, causes of action, or requests which arise after the filing of the stipulation might raise claims of non-compliance with Section 504.

51.     Plaintiffs and their counsel release and forever discharge all claims against Defendant for monetary relief they have asserted or could have asserted in this Case for attorney's fees, costs, and expenses incurred to date and through the date on which Plaintiffs file the Rule 41(a)(1)(A)(ii) stipulation pursuant to Paragraph 52, including but not limited to fees, costs, and expenses associated with this Settlement Agreement, and for any and all attorney's fees, costs, and expenses that may accrue after the date on which Plaintiffs file the Rule 41(a)(1)(A)(ii) stipulation pursuant to Paragraph 52 in connection with this Agreement, including but not limited to fees, costs, and expenses for any and all monitoring, implementation, or enforcement of, or motion practice related to, the Agreement.

52.     Within 4 days of the Effective Date, Plaintiffs shall file a joint stipulation of dismissal of this case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii); a copy of the joint stipulation to be filed is attached as Exhibit B.

## REPORTING

53.     With respect to each item in this Agreement to be performed within a specified time period, Defendant shall report to Plaintiffs as to whether the item has been performed at the close of the specified time period.

54.     Defendant shall report to Plaintiffs' Counsel:

   a.   Within 30 days of the determination, any determination by Defendant that it may no longer be practicable to perform any of the items contained in Paragraphs 22 through 46 in light of factors unforeseen at the Effective Date.

   b.   On January 31, 2021, and every 6 months thereafter until the end of the Compliance Period, subject to 26 U.S.C. § 6103, data for the preceding 6 months showing (i) the number of requests for abatement of interest or relief from penalty that were filed by a taxpayer claiming the standard deduction for the blind in which the IRS did not approve any abatement or relief; and (ii) the number of requests for abatement or relief that were filed by a taxpayer claiming the standard deduction for the blind in which the IRS approved some amount of abatement or relief.  In the event this response would result in a data set of 10 or smaller for either category, the IRS will indicate the information is Not Reportable.

   c.   On IRS's next full reporting period after full implementation of the AMP Process and subject to 26 U.S.C. § 6103, data regarding a random sample of 1,000 AMP elections processed through submission of the IRS form in the preceding 6 months.  The IRS will provide the following data

regarding the random sample of 1,000 AMP elections: (i) for elections processed using an attachment to a paper return, the number of such elections and the number processed by the program completion date (PCD) associated with the paper return; and (ii) for elections processed using an attachment to an electronically filed return or processed using the standalone election form not with a return, the number of requests that were processed in 30 days or fewer, the number of requests that were processed between 30 and 60 days, and the number of requests that were processed in 60 days or more. In the event this response would result in a data set of 10 or smaller for any category, the IRS will indicate the information is Not Reportable. In the event that there are fewer than 1,000 AMP elections processed by submission of the IRS form in the preceding 6 months, the data set will consist of all AMP elections made by submitting the IRS form in the preceding 6 months.

d.  On IRS's next full reporting period after full implementation of the AMP Process and subject to 26 U.S.C. § 6103, data regarding the increase in the number of AMP elections on file with the IRS during the preceding 6 months, broken down by each of the available AMP formats, regardless of whether the election was made by submission of an IRS form or by telephone request. In the event this response would result in a data set of 10 or smaller, the IRS will indicate the information is Not Reportable.

e.  On January 31, 2021, and every 6 months thereafter until the end of the Compliance Period, data regarding complaints of discrimination raised by

blind taxpayers with the IRS's Office of Equity, Diversity, and Inclusion received or processed in the preceding 6 months. That data will consist of a general description of the complaints; how the complaints were resolved; and the time it took to resolve the complaints. The IRS will not provide any personally identifying information.

55.     The Parties recognize and agree that the IRS's obligations are met under the Settlement Agreement once it has complied with the terms of this Settlement Agreement, and that the IRS is not guaranteeing to Plaintiffs that certain results will be achieved once the steps set forth in this Settlement Agreement have been implemented. Situations that would not constitute non-compliance with this Settlement Agreement include, by way of example only, that a certain number of taxpayers have submitted requests under the AMP Process, that specific taxpayers were not aware of the availability of the AMP Process, or that a specific number of abatement requests submitted by individual taxpayers were not granted.

## MODIFICATION

56.     Defendant may seek to modify an item in this Agreement, but only if Defendant determines that one or more of the following conditions applies:

a.   The item would violate any applicable Federal, State, or local statute, regulation, or ordinance, or any applicable court order;

b.   Defendant has determined that it will no longer be practicable to achieve an item in the specified time frame in light of factors unforeseen at the Effective Date; or

22

      c.  Defendant has determined that an alternative business practice, procedure, or method would enable it to achieve the goal(s) embodied in an item.

57.    If Defendant modifies or removes an item pursuant to Paragraph 56, Defendant must notify Plaintiffs' Counsel in writing of the nature, scope, and reasons for the modification(s) or removal(s).  Within seven (7) calendar days of Defendant's notification, Plaintiffs may request in writing from Defendant additional information about the proposed modification or removal.  If Plaintiffs object to the modification or removal of an item, they may invoke the dispute resolution process provided for in Paragraphs 59 through 64 within twenty-one (21) calendar days of receiving notice of such modification or removal.  If Plaintiff does not invoke the dispute resolution process within twenty-one (21) calendar days of receiving such notice, then any objections to such modifications or removals are deemed waived.

58.    If either party determines that technological changes create opportunities for meeting the needs of blind individuals more efficiently or effectively than is provided for under this Settlement Agreement, the proposing party shall present written notice to the other party. The receiving party shall consider such proposed changes and will advise the proposing party as to whether it agrees to modify this Settlement Agreement.

## DISPUTE RESOLUTION PROCESS

59.    The Parties agree that the process set forth in this Section is the exclusive process for remedying alleged violations of this Settlement Agreement.  The Parties further agree that following the filing of the stipulation of dismissal described in Paragraph 52, no other litigation action in the Case, including but not limited to the filing of any motions or pleadings, may be taken except as set forth in this Section.

60.     *Notice of Non-Compliance*. If a Party to this Settlement Agreement ("Initiating Party") believes that any other Party ("Responding Party") has not complied with any of the provisions of Paragraphs 22 through 24 and 28 through 46 of this Agreement, the Initiating Party shall provide the Responding Party with a written Notice of Non-Compliance containing the following information: (i) the alleged act of non-compliance; (ii) a reference to the specific provision(s) of this Agreement that the Initiating Party alleges the Responding Party has not complied with; (iii) a statement of the remedial action sought by the Initiating Party; (iv) a brief statement of the specific facts, circumstances, and legal argument supporting the position of the Initiating Party; and (v) any reasonably available, non-privileged information that supports the alleged failure to comply.  The Notice of Non-Compliance must be served promptly, and no later than sixty (60) days after the Initiating Party becomes aware, or reasonably should have become aware, of a potential violation.

61.     *Response*. Within 30 days of receipt of a Notice of Non-Compliance, the Responding Party shall respond to the Initiating Party in writing.  The Responding Party may request that the Initiating Party provide to the Responding Party any additional non-privileged information in the Initiating Party's possession that may assist investigation of the alleged failure to comply.  The Responding Party may further request that its time to respond be tolled until such information is provided.

62.     *Meet and Confer*. Within 30 days after the response described above, or as soon as practically possible thereafter, representatives of the Parties shall informally meet, either in person or via teleconference, and confer and attempt to resolve the issues raised in the Notice of Non-Compliance.

63.     *Referral to Mediation*. If the matters raised in the Notice of Non-Compliance are not resolved within 45 days of the initial meet and confer, the Initiating Party may request that the Court refer the matter to one of the three U.S. Magistrate Judges for the Northern District of California previously agreed to by the Parties, *see* ECF No. 27, or if all of those judges have ceased to be U.S. Magistrate Judges in the Northern District of California to a randomly assigned U.S. Magistrate Judge, for mediation at a settlement conference.  Following such referral, the Initiating Party may request that the assigned U.S. Magistrate Judge schedule a settlement conference.  The Parties expect that such requests for referral to a U.S. Magistrate Judge for mediation will be made within 90 days of the initial meet and confer.  If a Party believes it has cause to exceed 90 days before requesting a referral to a U.S. Magistrate Judge, it shall seek the consent of the other Party, which shall not be unreasonably withheld and which, if obtained, shall entitle that Party to request a referral after 90 days of the initial meet and confer, up to the date consented to by the other Party.  The Responding Party may at any time prior to 45 days after the initial meet and confer take the remedial action sought by the Initiating Party in its Notice of Non-Compliance to cure the alleged violation, in which case no request for mediation may be made.

64.     *Request for Judicial Enforcement*. If the Parties are unable to reach a mutually acceptable resolution through mediation, the Initiating Party may seek judicial enforcement of compliance with this Settlement Agreement.  The Parties agree to engage in the above dispute resolution procedures to resolve any dispute relating to the interpretation or implementation of this Settlement Agreement before bringing the matter to the Court's attention.  In the event that the Initiating Party seeks judicial enforcement

of the provisions of this Agreement, the Initiating Party shall file a motion pursuant to

Fed. R. Civ. P. 60(b)(6) seeking relief from the stipulation of dismissal. The Parties

agree not to dispute that the filing of such a motion constitutes an appropriate mechanism

to seek enforcement of the provisions of this Agreement. However, the Responding

Party shall not be deemed to have waived any available defenses to the substance of such

motion, and any right or authority to contend that no violation of this Settlement

Agreement has occurred. The Parties agree that any Rule 60(b)(6) motion for

enforcement shall not include a request that any party or nonparty to the Case be held in

contempt.

## NOTICE TO THE PARTIES

65.     All notices required or permitted hereunder shall be in writing and shall be

served on the Parties at the U.S. mail and email addresses set forth below. A Party's

email address or mailing address may be changed by written notice to the other Party.

To Plaintiffs:                  Valerie Yingling
                                Legal Program Coordinator
                                200 East Wells Street, Baltimore, MD 21230
                                Telephone: (410) 659-9314, extension 2440
                                vyingling@nfb.org

With a copy to:                 Jessica Weber
                                Brown Goldstein Levy, LLP
                                120 E. Baltimore St., Suite 1700
                                Baltimore, MD 21202
                                Telephone: (410) 962-1030
                                JWeber@browngold.com

                                Autumn M. Elliott
                                Disability Rights California
                                350 S. Bixel St., Ste. 290
                                Los Angeles, CA 90004
                                Telephone: (213) 213-8000
                                Autumn.Elliott@disabilityrightsca.org

26

To the IRS:

Carrie Y. Holland
Internal Revenue Service
Media and Publications
1111 Constitution Avenue, NW., Room 6708
Washington, DC 20224
Tel.: (202) 317-6046
Carrie.Y.Holland@irs.gov

With a copy to:

M. Andrew Zee
U.S. Department of Justice
Civil Division
450 Golden Gate Avenue
Room 7-5395
San Francisco, CA 94102
Telephone: (415) 436-6646
m.andrew.zee@usdoj.gov

Timothy E. Heinlein
General Legal Services
IRS Office of Chief Counsel
100 First St., 18th Floor,
San Francisco, CA 94105
Telephone: (213) 372-4036
timothy.e.heinlein@irscounsel.treas.gov

Shira L. Krieger
General Legal Services
IRS Office of Chief Counsel
33 Maiden Lane, 14th Floor
New York, NY 10038
Tel: (646) 259-8099
shira.l.krieger@irscounsel.treas.gov

## ADDITIONAL PROVISIONS

66.    *Authority*. Each Party represents to all other Parties that it, he, or she has

full power and authority to enter into this Settlement Agreement, that the execution of

this Agreement will not violate any other agreement binding the Party, and that this Agreement is a valid and binding obligation on the Party, enforceable in accordance with its terms. The signatories to this Agreement expressly warrant that they have been authorized to execute this Agreement and to bind their respective Parties to its terms and provisions.

67.     *Knowing Agreement*. Each Party acknowledges that they are represented by counsel and that they have reviewed, and had the benefit of legal counsel's advice concerning, all of the terms and conditions of this Settlement Agreement.

68.     *No Admission of Liability*. This Settlement Agreement shall not be construed as an admission by Defendant of the truth of any of the allegation or the validity of any claim asserted in the Case, or of the liability of Defendant, nor as a concession or an admission of any fault or omission of any act or failure to act, or of any statement, written document, or report heretofore issued, filed, or made by Defendant, nor shall the Settlement Agreement nor any confidential papers related hereto and created for settlement purposes only, nor any of the terms of either, be offered or received as evidence of discrimination in any civil, criminal, or administrative action or proceeding, nor shall they be the subject of any discovery or construed by anyone for any purpose whatsoever as an admission or presumption of any wrongdoing on the part of Defendant, nor as an admission by any Party to this Settlement Agreement that the consideration to be given hereunder represents the relief which could have been recovered after trial.

69.     *Integration*. This Settlement Agreement and its attachments and addenda constitute the entire agreement of the Parties, and no prior statement representation,

agreement, or understanding, oral or written, that is not contained herein, shall have any force or effect.

70. *Duties Consistent with Federal Law*. Nothing contained in this Settlement Agreement shall impose on Defendant any duty, obligation, or requirement, the performance of which would be inconsistent with federal statutes or federal regulations in effect at the time of such performance.

71. *Headings*. The headings in this Settlement Agreement are for the convenience of the Parties only and shall not limit, expand, modify, or aid in the interpretation or construction of this Settlement Agreement.

72. *Severability*. Should any non-material provision of this Settlement Agreement be found by a court to be invalid or unenforceable, then (A) the validity of other provisions of this Settlement Agreement shall not be affected or impaired; and (B) such provisions shall be enforced to the maximum extent possible.

73. *Jointly Drafted Agreement*. This Settlement Agreement shall be considered a jointly drafted agreement and shall not be construed against any party as the drafter.

## COUNTERPARTS

74. This Settlement Agreement may be executed in counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

## EFFECTIVE DATE AND COMPLIANCE PERIOD

75. This Settlement Agreement shall take effect upon being signed by counsel for all Parties.

76.     The Compliance Period of this Settlement Agreement shall begin on the
Effective Date and shall expire 21 months from the AMP Implementation Deadline.
Only during this Compliance Period may a Party may initiate a dispute pursuant to the
dispute resolution process provided for in Paragraphs 59 through 64.

## SIGNATURES

77.     By their signatures below, the Parties, by and through counsel, indicate
their consent to the terms and conditions set forth above.


Dated: July 10, 2020                    U.S. DEPARTMENT OF JUSTICE


                                        ETHAN P. DAVIS
                                        Acting Assistant Attorney General
                                        Civil Division
                                        CARLOTTA P. WELLS
                                        Assistant Branch Director
                                        Federal Programs Branch
                                        M. ANDREW ZEE
                                        Attorney
                                        Federal Programs Branch

                                By:     _____
                                        M. ANDREW ZEE
                                        U.S. DEPARTMENT OF JUSTICE
                                        450 Golden Gate Ave.
                                        Room 7-5395
                                        San Francisco, CA 94102

                                        *Attorneys for Defendant*

Dated: July 10, 2020

DISABILITY RIGHTS CALIFORNIA

AUTUMN M. ELLIOTT
BEN CONWAY

By: _____
      AUTUMN M. ELLIOTT
      DISABILITY RIGHTS
      CALIFORNIA
      350 S. Bixel Street, Suite 290
      Los Angeles, CA 90017

*Attorneys for Plaintiffs*

Dated: July 9, 2020

BROWN GOLDSTEIN LEVY

EVE HILL
JESSICA P. WEBER
ALYSSA L. HILDRETH

By: _____
      EVE HILL
      BROWN GOLDSTEIN LEVY
      120 E. Baltimore Street, Suite 1700
      Baltimore, MD  21202

*Attorneys for Plaintiffs*

# Exhibit A

## List of organizations/publications/stakeholders that IRS should contact about its new alt format process

- National Federation of the Blind (NFB)
  200 East Wells Street, Baltimore, MD 21230
  410-659-9314
  nfb@nfb.org
    o Including NFB's *Braille Monitor*, *The Nation's Blind Podcast*, and NFB-NEWSLINE®

- American Action Fund for Blind Children and Adults
  1800 Johnson St.
  Baltimore, MD 21230
  410-659-9314
  actionfund@actionfund.org

- National Library Service for the Blind and Physically Handicapped, Library of Congress
  1291 Taylor St NW
  Washington, DC 20542
  (202) 707-5100
  nls@loc.gov

- Bookshare
  480 California Ave.
  Suite 201 Palo Alto, CA 94306-1609
  650-352-0198
  info@bookshare.org

- American Association of the Deaf Blind
  248 Rainbow Drive #14864
  Livingston, TX  77399-2048
  aadb-info@aadb.org

- American Association of People with Disabilities
  2013 H Street, NW, 5th Floor
  Washington, DC 20006
  202-521-4316
  communications@aapd.com

- American Council of the Blind Inc.
  1703 N Beauregard St, Suite 420
  Alexandria, VA 22311
  (202) 467-5081
  info@acb.org

- American Foundation for the Blind
  1401 South Clark Street
  Suite 730
  Arlington, VA 22202
  212-502-7600
  afbinfo@afb.net

- Association for Education and Rehabilitation of the Blind and Visually Impaired
  5680 King Centre Drive, Suite 600
  Alexandria, VA 22315
  703-671-4500
  aer@aerbvi.org

- Blinded Veterans Association
  1101 King Street, Suite 300
  Alexandria, VA 22314
  800-669-7079
  info@bva.org

- National Association of Parents of Children with Visual Impairments
  15 West 65th Street
  New York, NY 10023
  (212) 769-6318
  napvi@Lighthouseguild.org

- National Association for Visually Handicapped
  22 West 21st Street, Sixth Floor
  New York, NY 10010
  212-889-3141
  navh@navh.org

- The Chicago Lighthouse
  1850 W. Roosevelt Rd.
  Chicago, IL 60608
  312-666-1331
  contactus@chicagolighthouse.org

- Columbia Lighthouse for the Blind
  8757 Georgia Avenue, Suite 805
  Silver Spring, MD 20910
  301-589-0894
  info@clb.org

- LightHouse for the Blind and Visually Impaired of San Francisco
  1155 Market Street, 10th Floor
  San Francisco, CA 94103
  415-431-1481

info@lighthouse-sf.org

- American Printing House for the Blind
  1839 Frankfort Avenue
  Louisville, KY 40206
  502-895-2405
  info@aph.org

- National Braille Press
  88 St. Stephen Street
  Boston, MA 02115
  617-266-6160
  contact@nbp.org

- Blindskills, Inc.
  P.O. Box 5181
  Salem, OR 97304-0181
  800-860-4224
  info@blindskills.com

- Vispero Podcast
  17757 US Hwy 19 N., Suite 560
  Clearwater, FL 33764
  727-803-8000
  info@vispero.com

- Blind Abilities Podcast
  info@blindabilities.com

# Exhibit B

Autumn M. Elliott (SBN 230043)
Ben Conway (SBN 246410)
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Fax: (213) 213-8001
autumn.elliott@disabilityrightsca.org
ben.conway@disabilityrightsca.org

Eve Hill
Jessica P. Weber
Alyssa L. Hildreth
BROWN GOLDSTEIN LEVY
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
Telephone: (410) 962-1030
Fax: (410) 385-0869
JWeber@browngold.com
AHildreth@browngold.com

*Attorneys for Plaintiffs*

ETHAN P. DAVIS
Acting Assistant Attorney General
CARLOTTA P. WELLS
Assistant Branch Director
M. ANDREW ZEE (CA Bar No. 272510)
Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
450 Golden Gate Avenue, Room 7-5395
San Francisco, CA 94102
Telephone: (415) 436-6646
Facsimile: (415) 436-6632
E-mail: m.andrew.zee@usdoj.gov

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| KAREN ROSE, ANNE L. PEYTON, RONZA OTHMAN, and THE NATIONAL FEDERATION OF THE BLIND, INC., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN TERNER MNUCHIN, Secretary of the U.S. Department of the Treasury, in his official capacity, <br><br> Defendant. | No. 4:19-cv-04254-HSG <br><br> **JOINT STIPULATION OF DISMISSAL WITH PREJUDICE** |

1        Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), Plaintiffs, Karen Rose, Anne

2    L. Peyton, Ronza Othman, and The National Federation of the Blind, Inc., and Defendant,

3    Steven Terner Mnuchin, sued solely in his official capacity as Secretary of the Treasury

4    (collectively "the Parties"), stipulate to the dismissal with prejudice of this action in its entirety.

5    This Joint Stipulation of Dismissal incorporates the terms of the Settlement Agreements executed

6    by the parties on [date to be inserted], 2020, which are attached as Exhibits 1 and 2. The Parties

7    have agreed, pursuant to Paragraph 64 of Exhibit 1, not to dispute that filing a motion pursuant to

8    Fed. R. Civ. P. 60(b)(6) seeking relief from this Joint Stipulation of Dismissal after exhausting

9    the dispute resolution procedures described in Paragraphs 60-63 of Exhibit 1 constitutes an

10   appropriate mechanism to seek enforcement of the provisions of Exhibit 1.

11

12

13   Dated: _____, 2020.          Respectfully submitted,

14

15                             U.S. DEPARTMENT OF JUSTICE

16                             ETHAN P. DAVIS

17                             Acting Assistant Attorney General
                          CARLOTTA P. WELLS

18                             Assistant Branch Director

19

20                             M. ANDREW ZEE (CA Bar No. 272510)
                          Attorney

21                             Civil Division, Federal Programs Branch
                          U.S. Department of Justice

22                             450 Golden Gate Avenue, Room 7-5395
                          San Francisco, CA 94102

23                             Telephone: (415) 436-6646
                          Facsimile: (415) 436-6632

24                             E-mail: m.andrew.zee@usdoj.gov

25

26                             *Attorneys for Defendant*

27

28                             Autumn M. Elliott (SBN 230043)
                          Ben Conway (SBN 246410)

**Rose v. Mnuchin**, No. 4-19-cv-04254-HSG
**Joint Stipulation of Dismissal with Prejudice**

DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Fax: (213) 213-8001
autumn.elliott@disabilityrightsca.org
ben.conway@disabilityrightsca.org


Eve Hill
Jessica P. Weber
Alyssa L. Hildreth
BROWN GOLDSTEIN LEVY
120 E. Baltimore Street, Suite 1700
Baltimore, MD  21202
Telephone: (410) 962-1030
Fax: (410) 385-0869
JWeber@browngold.com
AHildreth@browngold.com

*Attorneys for Plaintiffs*